IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | : CASE NO.: 1:23-CR-23 (WLS-ALS-5) |
| GARRY ALLEN HARRIS, | : |
| | : |
| Defendant. | : |
| | : |

## ORDER

Before the Court are Defendant's Motions to Suppress Statements (Docs. 115 & 116) and Defendant's Motion to Suppress Facebook Evidence (Doc. 121), filed on April 17–18, 2024. Therein, Defendant moves the Court to suppress statements made during an interview with law enforcement officials as well as evidence seized from a search of Defendant's Facebook account. For the reasons stated herein, Defendant's Motions to Suppress (Docs. 115, 116, & 121) are **DENIED**.

### I. PROCEDURAL BACKGROUND

On August 8, 2023, Defendant Garry Harris ("Defendant") and four additional defendants were indicted by a grand jury in an eight-count Indictment (Doc. 1). Defendant was charged in Count 1 with Conspiracy to Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and in Counts 2 and 4 with Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2. (Doc. 1).

On April 18, 2024, Defendant filed the instant Motions to Suppress (Docs. 115, 116, & 121), wherein Defendant requested an evidentiary hearing on the Motions. (Doc. 116 at 6); (Doc. 121 at 3). The Government filed a timely Response (Doc. 126) to Defendant's Motion to Suppress Statements on May 8, 2024, as well as a Response (Doc. 132) to Defendant's Motion to Suppress Facebook Evidence. Defendant filed a Reply (Docs. 134 & 135) to the Government's Reponses. The Court held an evidentiary hearing on the Motions on October 16, 2024. At the conclusion of the evidence, the Court provided the Parties with the opportunity to submit post-hearing briefs. (*See* Doc. 204). Defendant filed his Post Hearing

Briefs (Docs. 210 & 211) on November 18, 2024. The Government filed its own Post Hearing Briefs (Docs. 214 & 215) on December 2, 2024. The briefing period having concluded, the Motions are ripe for resolution.

## II. FACTUAL FINDINGS

At the October 16, 2024 evidentiary hearing, the Government presented one witness, DEA Task Force Officer Michael Antonio, and two exhibits, which were admitted over objection. Defendant presented one witness, Jason Ethridge, and eight exhibits, which were admitted either without objection or by stipulation of the Parties. Upon review and consideration of the exhibits, witness testimony, and the Parties' arguments, the Court makes the following findings of fact.

### A. Motion to Suppress Statements

In July of 2023, Defendant was incarcerated at Telfair State Prison where he was serving a sentence in an unrelated case. (Doc. 206 at 9). On July 7, 2023, Defendant was placed in a room within the prison for an interview with Agent Michael Antonio in reference to an ongoing drug crime investigation. (*Id.* at 25). Before beginning the interview, Agent Antonio completed a Rights Waiver Certificate ("the waiver form") by taking down Defendant's personal information and reciting the form's *Miranda* warnings to Defendant. (*Id.* at 14–15). The waiver form included the following statements:

- I have the right to remain silent.
- Anything I say can be used against me in a court of law.
- I have the right to talk to a lawyer and have him present with me while I am being questioned.
- If I can not[sic] afford to hire a lawyer, one will be appointed to represent me, before questioning, if I wish.
- I can decide at any time to exercise these rights and not answer any questions or make any statements.

(Doc. 201-1). The form concluded with two additional statements, which were also read aloud: (1) "I understand these rights and, having these rights in mind, I am willing to talk now[;]" and (2) "I have not been threatened, I have not been promised anything, I have not been forced in any way to answer any questions or make any statements." (*Id.*); (*see* Doc. 206 at 18).

Defendant verbally acknowledged that he understood the statements recited to him. Defendant, Agent Antonio, and a witness signed the waiver form. (Doc. 206 at 14).

The interview was audio recorded using Agent Antonio's cellphone, which was activated before Agent Antonio read the final statements above. (Doc. 206 at 9, 13). Agent Antonio began by explaining the narcotics investigation through which Defendant's name was uncovered in Facebook messages exchanged between Defendant and other individuals under investigation. (*Id.* at 7–8). Agent Antonio's purpose in conducting the interview was to "see if [Defendant] want[ed] to help [him]self out" by providing information related to other targets of the investigation and the drug activity described in the messages. Hr'g Recording at 4:11–4:13, *United States v. Harris*, No. 1:23-CR-23 (M.D. Ga. Oct. 16, 2024) ("Hr'g Recording"). Defendant asked whether he was being charged with any crimes, to which Agent Antonio responded, "we'll get to that later." *Id.* at 4:12. Less than two minutes later, Agent Antonio told Defendant that, based on information previously discovered through witness statements and a review of Defendant's Facebook account, there was a possibility Defendant would be federally indicted for what Agent Antonio admitted was "pretty much distribution." *Id.* at 4:14–4:16; (Doc. 206 at 30).

As the interview progressed, Agent Antonio again told Defendant that he could be facing a federal indictment, which was likely to be filed the following month, in August of 2023, and that if he were indicted, Defendant was likely to "serve all of it," given his criminal history. Hr'g Recording at 4:26–4:30. Throughout the interview, Agent Antonio reiterated that his purpose in interviewing Defendant was to gather information related to Defendant's potential involvement in the suspected illegal drug activity and to determine whether Defendant wished to cooperate in the investigation. (Doc. 206 at 34). While Agent Antonio stated that providing information could "help with sentencing, if it comes to that," he cautioned that he was unable to make any promises regarding what charges, if any, Defendant might be indicted on or any potential term of imprisonment Defendant might receive. Hr'g Recording at 4:16–4:20. At one point in the conversation, Defendant asked to speak to the district attorney, to which Agent Antonio advised that only Defendant's attorney would be able to negotiate with the United States Attorney's Office. *Id.* at 4:21–4:24.

The interview lasted approximately forty minutes. At no time did Defendant request to speak with an attorney, nor did Defendant request to stop or suspend the interview. (Doc. 206 at 20). Agent Antonio advised that Defendant could talk to law enforcement again if he desired, and Defendant requested information on how to contact Agent Antonio in the future. Hr'g Recording at 4:43–4:47.

### B. Motion to Suppress Facebook Evidence

As the investigation progressed, Agent Antonio applied for and received three search warrants. (Doc. 206 at 57); (Docs. 202-3, 202-5, & 202-6). The first warrant issued on October 25, 2022, and authorized the search of two cellphones seized by local law enforcement during the arrest of co-defendants Ryan Farr and Eric Strickland. (*See* Doc. 202-3). Agent Antonio appeared personally before now-retired United States Magistrate Judge Thomas Q. Langstaff ("U.S. Magistrate Judge Langstaff") on that date to submit the warrant request because U.S. Magistrate Judge Langstaff required law enforcement officers requesting a warrant from him for the first time to participate in the warrant attestation process in-person. (Doc. 206 at 55). Agent Antonio completed the Court's standard form "AO 106 Application for a Search Warrant" and signed the application and the affidavit in the presence of U.S. Magistrate Judge Langstaff. (*Id.*); (*see* Doc. 202-3).

The second warrant issued on November 17, 2022, and authorized the search of information associated with Defendant's Facebook account. (*See* Doc. 202-5). Agent Antonio did not appear before U.S. Magistrate Judge Langstaff in person but instead submitted the warrant application and affidavit in support via email using the Court's standard form "AO 106A Application for a Warrant by Telephone or Other Reliable Electronic Means." (Doc. 206 at 57). Agent Antonio then attested to the contents of the application and affidavit over the telephone, granting U.S. Magistrate Judge Langstaff permission to sign his name on the last page of both documents. (*Id.*) U.S. Magistrate Judge Langstaff signed the agent's name on the applicant signature line, writing "Michael Antonio (by TQL w/ express permission)[.]" (Docs. 202-5 & 202-8).

The third warrant issued on January 9, 2024, and also authorized the search of information associated with Defendant's Facebook account. (*See* Doc. 202-6). As with the November 17, 2022 warrant, Agent Antonio submitted the warrant application and affidavit

4

via email and attested to the information contained therein by telephone. (Doc. 206 at 58). Agent Antonio again used the standard form for warrant applications by telephone or other electronic means. (*Id.*) U.S. Magistrate Judge Langstaff signed Agent Antonio's name on the last page of both documents with the agent's permission, again writing "Michael Antonio (by TQL w/ express permission)[.]" (Docs. 202-4 & 202-6).

### III. LAW AND ANALYSIS

#### A. Defendant's Motions to Suppress Statements (Docs. 115 & 116)

Defendant, relying on the Fifth and Fourteenth Amendments, moves the Court to suppress the assertedly involuntary statements Defendant made during the July 7, 2023 interview at Telfair State Prison. (*See generally* Docs. 115 & 116). Defendant's Motions raise two discrete issues: (1) whether Defendant validly waived his rights to remain silent and to have counsel present, and (2) whether the statements made after the waiver were voluntary or the product of police coercion. The Court addresses each issue in turn.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. The Government is thus prohibited from using "statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A defendant may waive his *Miranda* rights if that waiver is "made voluntarily, knowingly and intelligently." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Miranda*, 384 U.S. at 444). The Government bears the burden of proving, by a preponderance of the evidence, both that Defendant waived his rights under *Miranda*, and that any statements made thereafter were voluntary. *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004); *see Miller v. Dugger*, 838 F.2d 1530, 1538 (11th Cir. 1988) ("[U]ncounselled statement[s] must be both voluntary and made after a knowing and intelligent waiver of the *Miranda* rights to be admissible.").

5

*1. Miranda Waiver*

In determining the validity of a *Miranda* waiver, the threshold inquiry is whether the defendant was actually informed of his *Miranda* rights.[1] *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995). Here, that is without question. The audio recording from the July 7, 2023 interview and the signed waiver of rights form, taken together with Agent Antonio's testimony that he read the form aloud and witnessed Defendant sign it, plainly demonstrate that Defendant was informed of his rights before he consented to be interviewed. The Court thus proceeds to whether Defendant voluntarily, knowingly, and intelligently waived the rights that Agent Antonio read to him. *See United States v. Farris*, 77 F.3d 391, 396 (11th Cir. 1996).

To establish the validity of a *Miranda* waiver, the Government must make a two-part showing. First, the Government must show that the waiver was voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. Second, the Government must show that the waiver was knowing in that it was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* Although not conclusive, a signed *Miranda* waiver form is "usually strong proof" that a suspect voluntarily waived his rights. *Hart v. Att'y Gen.*, 323 F.3d 884, 893 (11th Cir. 2003) ("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably . . . sufficient to establish waiver. The question is . . . whether the defendant in fact knowingly and voluntarily waived the rights . . . ." (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

*2. Voluntary Waiver and Subsequent Statements*

At the first step, to determine whether a confession is voluntary, the Court assesses "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). This inquiry focuses on whether there has been any "police overreach[]." *Colorado v. Connelly*, 479 U.S. 157,

---

[1] The Parties disagree about whether Defendant was "in custody" at the time of the interview. (*See* Doc. 116 at 6); (Doc. 126 at 13). In any event, the Court need not decide the issue because, as discussed below, Defendant's waiver of rights was voluntary, knowing, and intelligent. *See United States v. Lall*, 607 F.3d 1277, 1284 (11th Cir. 2010) ("A suspect is only entitled to *Miranda* warnings when he is interrogated while in custody, because such circumstances are presumed to exert pressure on him to speak.").

6

163 (1986). Courts should consider factors such as "the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police." *United States v. Vanbrackle*, 397 F. App'x 557, 562 (11th Cir. 2010).

Here, the totality of the circumstances show that Defendant's statements were the product of his own free will. Agent Antonio informed Defendant of his rights prior to questioning, as the audio recording of the interview reflects. Defendant was also provided with a waiver of rights form, which he signed. The interview lasted less than one hour with Defendant initiating much of the conversation. Defendant has not alleged that Agent Antonio used physical force or threatened him with the use of force, nor is there any evidence in the Record that force or threats were used against Defendant during the interview. Defendant never requested to stop the interview, despite being advised of his right to do so.

Additionally, the Court is unpersuaded that Defendant's statements were "induced by intimidation and misrepresentation of his role as an informant rather than a suspect" and coerced through promises of a reduced sentence for three reasons. (*See* Doc. 211 at 1, 4–6).

First, Defendant's demeanor during the interview indicates that he was not intimidated by or fearful of Agent Antonio. As noted above, Defendant initiated much of the conversation, and at times, even laughed and generally engaged in jovial conversation with Agent Antonio.

Second, Agent Antonio made clear that his decision to interview Defendant resulted from an ongoing investigation in which Defendant was identified as a potential suspect. Defendant was informed of the possibility that he could be indicted on federal charges as a result of his involvement in the drug distribution scheme at the center of the investigation. The purpose of the interview was not to create a confidential informant arrangement between Defendant and law enforcement, and such an arrangement was neither proposed nor discussed during the interview. As such, Defendant's role as a suspect in the underlying investigation was clear, and Defendant was not misled into believing he was serving as an informant. *See United States v. Jones*, 32 F.3d 1512, 1517 (11th Cir. 1994) ("Isolated incidents of police deception, and discussions of realistic penalties for cooperative and non-cooperative defendants, are normally insufficient to preclude free choice.").

Third, Agent Antonio told Defendant at least three times that, while his goal was to determine whether Defendant wished to "help himself out" by providing information, he could not make any promises regarding Defendant's release from state custody, any potential charges brought against Defendant in the future, or any potential sentence Defendant received. At no point was Defendant promised leniency in exchange for his statements. *See Williams v. Johnson*, 845 F.2d 906, 909 (11th Cir. 1988) (a law enforcement officer's promise that the defendant's cooperation would be made known to the appropriate authorities, with no promise of leniency, did not render the defendant's subsequent confession involuntary). Thus, having considered the totality of the circumstances, the Court finds that Defendant's waiver and subsequent statements were voluntary, rather than the product or result of police coercion.

3. *Knowing and Intelligent Waiver*

At the second step of the waiver analysis, the Government must also show that the waiver was knowing and intelligent in that Defendant waived his rights with a "requisite level of comprehension." *Moran*, 475 U.S. at 421. No single factor is determinative. Rather, courts examine the circumstances of each case, including the background, experience, and conduct of the accused. *See Edwards v. Arizona*, 451 U.S. 477, 482 (1981).

Here, the totality of the circumstances show that Defendant waived his rights knowingly and intelligently as Defendant had the capacity to understand his rights, was advised of them, and understood them. Specifically, Defendant verbally acknowledged that he understood his rights when Agent Antonio concluded the recitation of the waiver form. Further, Defendant's criminal history and his state of incarceration at the time of the interview demonstrate a familiarity with the criminal justice system such that Defendant was aware of the consequences of giving a statement to law enforcement. Defendant did not ask any questions regarding these rights and appeared to be thinking clearly and logically at the time of the interview. Defendant, nonetheless, agreed to speak with Agent Antonio and did not request an attorney, despite being advised of his right to do so. As such, the Court finds that the waiver was intelligent and knowing.

In sum, having considered the totality of the circumstances, the Court finds that Defendant validly waived his Fifth Amendment rights to remain silent and to have counsel

present. Because Defendant waived his rights and his waiver was knowing, voluntary, and intelligent, and Defendant's subsequent statements were voluntary, Defendant's statements should not be suppressed. Accordingly, Defendant's Motions to Suppress Statements (Docs. 115 & 116) are **DENIED**.

### B. Motion to Suppress Facebook Evidence

Defendant also moves under the Fourth Amendment to suppress evidence seized from a search of his Facebook account, contending that the warrants authorizing the search were invalid. (Doc. 121). Defendant's motion raises two discrete issues: (1) whether the affidavit in support of the warrant fails to meet the oath or affirmation requirement because it was not physically signed by the affiant, Agent Antonio, and (2) whether U.S. Magistrate Judge Langstaff abandoned his role as a neutral and detached magistrate by affixing Agent Antonio's signature to the affidavit with Antonio's permission. The Court addresses each issue in turn.

The Fourth Amendment to the U.S. Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Thus, for a warrant to be valid, it must (1) be supported by probable cause based on oath or affirmation, (2) be issued by a neutral and detached magistrate, and (3) particularly describe the place to be searched and the things to be seized. *Dalia v. United States*, 441 U.S. 238, 255 (1979). The burden of establishing that a search warrant is defective is upon the defendant. *United States v. Lockett*, 533 F. App'x 957, 965 (11th Cir. 2013) ("When a search is conducted pursuant to a warrant, the burden is on the defendant to show that the warrant is invalid.").

#### 1. *Oath or Affirmation*

Defendant appears to generally challenge that Agent Antonio's oath or affirmation was procedurally and constitutionally sufficient, and argues that suppression is warranted as a result. The Court construes Defendant's argument as asserting two strained theories that might justify suppression. First, Defendant argues that the Federal Rules of Criminal Procedure were not followed. And second, that even if the Rules were followed, they nevertheless violate the Constitution as applied to Defendant. Neither argument is persuasive.

First addressing compliance with the Federal Rules of Criminal Procedure. The Rules prescribe various methods for officers to obtain search warrants. Rules 4.1 and 41 allow magistrate judges to issue warrants based on information communicated by telephone and other electronic means.[2] Rule 4.1 prescribes specific procedures a magistrate must follow when proceeding with the warrant application process telephonically, which includes placing the applicant under oath. *See* Fed. R. Crim. P. 4.1(b)(1). Further, "[i]f the applicant does no more than attest to the contents of a written affidavit submitted by reliable electronic means, the judge must acknowledge the attestation in writing on the affidavit." Fed. R. Crim. P. 4.1(b)(2)(A). Rule 4.1 does not prescribe a particular method of acknowledgement.

Here, the Court is satisfied that U.S. Magistrate Judge Langstaff's signing of Agent Antonio's name with the designation "by TQL w/ express permission" fulfills the Rule's requirement. Even if the Court was not satisfied that the signature and accompanying designation comply with the Federal Rules, the evidence at issue would not be subject to suppression. "[U]nless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Loyd*, 721 F.2d 331, 333 (11th Cir. 1983) (holding that a search warrant was valid despite issuing magistrate's failure to comply with specific Rule 41 requirements where there was no evidence that such failure had any effect on the search or that the noncompliance was in deliberate bad faith). As noted above and discussed in further detail below, the warrants in this case were issued in compliance with the Federal Rules of Criminal Procedure and the Fourth Amendment. Defendant has provided no evidence of prejudice or that either Agent Antonio or U.S. Magistrate Judge Langstaff deliberately and intentionally disregarded the Rule's provisions, and as such, suppression is not warranted on that basis.

Turning to the constitutionality of the Federal Rules as applied to Defendant, the Court is similarly unpersuaded. The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "An 'Oath

---

[2] Rule 41(d)(3) provides, "[i]n accordance with Rule 4.1, a magistrate judge may issue a warrant based on information communicated by telephone or other reliable electronic means."

10

or affirmation' is a formal assertion of, or attestation to, the truth of what has been, or is to be, said." *United States v. Turner*, 558 F.2d 46, 50 (2nd Cir. 1977) (noting that the requirement is "designed to ensure that the truth will be told by ensuring that the witness or affiant will be impressed with the solemnity and importance of his words"). The oath is a matter of substance, rather than form, and the requirement is satisfied so long as the statements and testimony forming the basis for the probable cause determination are sworn by the affiant. *See United States v. Donaldson*, 558 F. App'x 962, 967 n.3 (11th Cir. 2014) ("'The Fourth Amendment does not require that the basis for probable cause be established in a written affidavit; it merely requires that the information provided to the issuing magistrate be supported by Oath or affirmation.'" (quoting *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994)); *Frazier v. Roberts*, 441 F.2d 1224, 1226 (8th Cir. 1971) ("It is clear that the Fourth Amendment permits the warrant-issuing magistrate to consider sworn oral testimony supplementing a duly executed affidavit to determine whether there is probable cause upon which to issue a search warrant."). For this reason, an affidavit in support of a search warrant will still be valid, even when unsigned, so long as the requesting officer attests to its contents under oath. *See Clyburn*, 24 F.3d at 617 (holding that "magistrates may consider sworn, unrecorded oral testimony in making probable cause determinations" when issuing warrants).

Here, Agent Antonio prepared and submitted two affidavits and two warrant applications via email for U.S. Magistrate Judge Langstaff's consideration on November 11, 2022, and January 9, 2024. The affidavits as well as the warrant applications were unsigned at the time of submission. Agent Antonio, however, attested to the statements in the warrant applications and accompanying affidavits telephonically. This is confirmed by a notation at the bottom of the affidavits and directly above the United States Magistrate Judge's signature which states: "Pursuant to Federal Rule of Criminal Procedure 4.1, the contents of the present affidavit were telephonically sworn to me on this 17th day of November, 2022." (Def. Ex. 8 at 16). The January 9, 2024 affidavit contains the same notation with the aforementioned date. (Def. Ex. 4). The November 17, 2022 and January 9, 2024 warrant applications contain a similar remark on the last page of the application, which reads: "Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone." (Def. Ex. 5 & 6).

11

Indeed, Defendant has not cited any authority, and the Court can find none, which even suggests that a search warrant is automatically rendered invalid when the supporting affidavit is attested to under oath but not physically signed by the affiant in the physical presence of the issuing magistrate. (*See generally* Doc. 121 & 210). As such, the Court finds that the affidavits in support of the November 17, 2022 and January 9, 2024 search warrants, as well as the warrant applications themselves, were attested to by Agent Antonio and thus satisfy the Fourth Amendment's oath or affirmation requirement.

*2. Neutral and Detached Magistrate*

"A search warrant must be reviewed by 'a neutral and detached magistrate' before it can be executed." *United States v. Martin*, 297 F.3d 1308, 1316 (11th Cir. 2002) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 450 (1971)). Neutrality and detachment require "severance and disengagement from activities of law enforcement[,]" *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972), and "courts must also insist that the magistrate purport to perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *United States v. Leon*, 468 U.S. 897, 914 (1984).

While there is no bright line rule regarding what actions constitute law enforcement activities, a judicial officer abandons his judicial role and fails to be neutral and detached when he "allow[s] himself to become a member, if not the leader, of the search party which was essentially a police operation." *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326–27 (1979); *compare United States v. Martin*, 297 F.3d 1308, 1317 (11th Cir. 2002) (holding that the judge did not wholly abandon his judicial role even though he relied in part on his close relationship with the requesting officer because he read the affidavit and there was no showing that his relationship with the officer interfered with his independent review of the case), *United States v. Banks*, 539 F.2d 14, 16 (9th Cir. 1976) (holding that the commanding officer of a military reservation was sufficiently neutral and detached because he had not "participated in any way in the investigation or prosecution" of the defendant), *and United States v. Powell*, 28 F.3d 1212, *2 (4th Cir. 1994) (holding that issuing judge's prior involvement as district attorney in unrelated cases involving the defendant did not render the judge incapable of neutral and detached review of the warrant application), *with United States v. Parker*, 373 F.3d 770, 773–74 (6th Cir. 2004) (holding that trial commissioner who also held position as administrative

12

assistant at county jail was not sufficiently disengaged from activities of law enforcement to satisfy the neutral and detached requirement for issuance of search warrants), *and United States v. Decker*, 956 F.2d 773, 777 (8th Cir.1992) (holding that the magistrate judge abandoned his duty to act in a neutral and detached manner when he signed a search warrant without reading it).

Here, Defendant presented no evidence, and there is none in the Record, which suggests that U.S. Magistrate Judge Langstaff was involved in the investigation of this case, that Judge Langstaff did not read the warrant applications or affidavits before signing them, or that Judge Langstaff altered the affidavits in any way. Likewise, there is no evidence to suggest that Judge Langstaff failed to conduct his own independent review of the warrants or the underlying affidavits. The Court is unpersuaded by Defendant's argument, devoid of citation to relevant authority, that the mere act of signing the warrant applications and supporting affidavits with the affiant's express permission, while speaking to said affiant over the telephone, constitutes a law enforcement activity, and thus a departure from neutrality and detachment. Indeed, such practices play a critical role in effective law enforcement because they allow the issuance of a warrant to law enforcement when the physical presence of a magistrate is impracticable. Accordingly, the Court finds that U.S. Magistrate Judge Langstaff did not abandon his judicial role, and thus, the warrants in this case were issued by a neutral and detached magistrate.

Upon review, the Court finds that Agent Antonio properly attested to the contents of the warrant application documents, thus satisfying the oath or affirmation requirement of the Fourth Amendment. The Court further finds that the warrants were issued by a neutral and detached magistrate. For these reasons, Defendant has not met his burden of showing that the search warrants issued in this case were invalid. Accordingly, Defendant's Motion to Suppress Facebook Evidence (Doc. 121) is **DENIED**.

## CONCLUSION

In sum, based on the totality of the circumstances, the Court finds that Defendant validly waived his Miranda rights, and that the search warrants in this case were issued in accordance with the Constitution and the relevant Rules. As such, Defendant's Motions to Suppress (Docs. 115, 116, & 121) are **DENIED**. As previously noticed by the Court, a pretrial

13

conference in this matter is currently scheduled Wednesday, March 5, 2025, at 3 P.M. at the C.B. King United States Courthouse.

**SO ORDERED**, this 14th day of February 2025.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE
UNITED STATES DISTRICT COURT**